Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,345-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

RELIABLE LIFE INSURANCE                Plaintiff-Appellee
COMPANY, INC.

versus

DARRYL MILLER                          Defendant-Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. C-2023-2738

Honorable Frederick D. Jones, Judge

* * * * *

DIANNE HILL                            Counsel for Appellant

S. HUTTON BANKS                        Counsel for Appellee

* * * * *

Before PITMAN, STEPHENS, and ELLENDER, JJ.

**PITMAN, C. J.**

Defendant Darryl Miller appeals the judgment of the trial court granting summary judgment in favor of Plaintiff Reliable Life Insurance Company ("RLIC") and determining the rights of the parties under written instruments related to immovable property in Ouachita Parish. For the following reasons, the judgment of the trial court is affirmed.

**FACTS**

RLIC is a company based in Monroe, Louisiana, and its authorized representative and officer is Cleo Miller. RLIC filed a petition for damages and declaratory relief against Darryl Miller,[1] seeking a determination regarding its rights under written instruments relating to immovable property in Ouachita Parish located at 3702 Gouville Drive. Its suit sought a determination of whether Darryl leased or purchased the property from it and also sought a judgment returning its property because he had stopped making payments in 2022.

RLIC purchased the property in May 2013 for $225,000, which was paid to the seller at closing. In June 2014, acting through its authorized representative Joseph Miller, it executed a written lease agreement leasing the residential property to Darryl for $1,062.50 per month for a term of 48 months, and then month-to-month thereafter. The terms of the lease required rent to be paid on the first of the month or a late charge of 10 percent would become due if not paid by the fifth day of the month and another 10 percent if not paid by the tenth of each month. The lease stated that Darryl waived his right to any notice and agreed to vacate the property

---

[1] Darryl Miller is the son of Joseph and Cleo Miller. He was a former employee of RLIC until he was terminated.

in the event the lessor declared the lease terminated. He also agreed to pay reasonable attorney fees and costs.

Darryl took possession of the property and remained in possession. He signed a promissory note on September 1, 2015, promising to pay RLIC $198,00 plus interest in monthly installments of $1,062.50 as per the written lease agreement. The promissory note further provided that in the event he failed to make a single monthly payment, the holder of the note had the option to accelerate the entire obligation without providing notice of default to him.

In addition to the promissory note, Darryl, misidentified as "Mortgagee,"[2] also executed a collateral mortgage allowing RLIC, misidentified as "Mortgagor," to secure funds from Darryl, who declared and acknowledged a debt of $225,000, less $27,000 previously paid by him to it in the form of monthly rent toward the down payment on this mortgage note represented by the promissory note. The mortgage also states that RLIC warrants that record title to the mortgaged property shall be in the name of the "Mortgagee."[3] Another clause states that in the event the "Mortgagee" defaults, the "Mortgagor," without making a demand and without putting him in default, may seize all or part of the mortgaged property and have it sold by executory process or any other legal process.

---

2. The promissory note was attached to a purported collateral mortgage that references the sale by which RLIC purchased the property in 2013. RLIC's petition alleged that the collateral mortgage Darryl signed presumably misidentifies him as the "Mortgagee" and RLIC as the "Mortgagor." RLIC also alleged that there are no written instruments conveying any ownership interest in the property to him. These instruments create confusion, especially because the designations of the parties are reversed.

3. The "mortgage property" is not identified until the last page as the house Darryl rented on Gouville Drive. Darryl is made responsible for all property taxes and assessments made on the home.

2

The mortgage also contains a clause providing that if any proceedings are instituted to enforce the mortgage, "either by executory process or by ordinary suit, any and all declarations of fact made by authentic act by a person declaring such facts lie within his knowledge shall constitute authentic evidence of such facts for the purpose of the proceeding." Despite all of the allusions to a purported act of sale of the home from RLIC to Darryl, no act translative of title was ever created.

In its petition, RLIC alleged that regardless of whether Darryl owed the rent under a lease or pursuant to monthly installments due on a sale, he stopped making payments of any kind in any amount around June 9, 2022, although he continued to occupy the property. RLIC alleged that for 109 months of consecutive occupancy, the amount due was $115,812.50, excluding late fees, penalties and/or interest, and he had paid only $91,599.00.

RLIC noted that during the Covid pandemic, Darryl applied for emergency rental assistance from the Louisiana Emergency Rental Assistance Program ("LERAP") and verified that he was leasing the property from it. Accordingly, LERAP paid RLIC $17,137.50 in partial compensation for his delinquent rental payments. RLIC alleged that, pursuant to this admission to the state that he was renting the property, he was estopped from claiming he purchased, rather than leased, the subject property. RLIC noted that as a condition of accepting the check for emergency rental assistance from the state, it agreed it would not charge, and would waive and forgive, penalties, interest and court costs owed for the months from April 2020 through July 2022. It reserved the right to charge him a $100 late fee for each month during that time period.

3

RLIC prayed for damages and for judgment under La. C.C.P. art. 1871 declaring that RLIC did not sell Darryl any ownership interest in the property and that any and all rights and obligations owed to it would be found in the lease agreement. It also prayed that he be found to be in breach of the lease and ordered to vacate the subject property in addition to paying all costs. In the alternative, it prayed that he be declared to have breached the promissory note and found liable to it for that breach.

Darryl's answer alleged that he is the owner of the home although he admits he signed a lease. He claimed he signed the promissory note under his father's instructions and was under the impression that a deed to the house would be issued and recorded, but that deed never materialized. He claimed because the mortgage was "defective," he quit making payments although he continued to occupy the home. He contended that Cleo and her daughter applied for and received funds under the guise of rental assistance. He also alleged that he was defrauded by RLIC and his father's failure to execute and record the deed of sale of the home to him.

In November 2023, RLIC filed a motion for partial summary judgment on the issue of default. In support of this motion, it filed Cleo's affidavit citing the lease agreement and stating that she was not aware of any written instrument purporting to grant, transfer or convey any ownership interest in the property to Darryl. In addition, it attached the lease agreement, the promissory note, the collateral mortgage and answers to interrogatories. The affidavit affirmed that Darryl had not made any payments due to RLIC since June 2022 and that RLIC had received over $17,000 from LERAP.

4

Darryl responded and stated that RLIC sued him based on an alleged debt under a contract he signed but then failed to prove a valid contract. He claimed the mortgage superseded the lease agreement, but it was defective in that it was never filed and neither was any act translative of title deeding the house to him. He also argued that the mortgage was defective because he is designated as the "Mortgagee" instead of the "Mortgagor."

On May 1, 2024, the matter was heard, and both parties were represented. The trial court considered the exhibits, the entire record, the objections and arguments and granted RLIC's partial summary judgment finding Darryl in default on rental payments for the house. The judgment was signed on May 30, 2024, and was not appealed.

On June 21, 2024, RLIC filed a pleading entitled "Motion for Summary Judgment Declaring Dissolution and Awarding Possession," in which it prayed for judgment in its favor awarding it possession of the real property. The certificate of service stated that a copy of the motion for summary judgment was served on all counsel of record by email. Further, it certified that RLIC requested the Ouachita Parish Sheriff to serve Darryl with the motion, memo, exhibits and executed Rule to Show Cause. That same day, RLIC's attorney sent an email to Darryl's attorney, Dianne Hill, referenced as "MSJ with memo and exhibits.pdf." The message said, "Please find attached pleadings filed to day [sic] in the above captioned matter." Attached to the motion were sworn affidavits and Darryl's answer and admissions of fact regarding the lease agreement and that no written instrument exists which purported to convey any ownership interest in the property to him. The admissions also included that he had agreed to pay rent for the home and that he had not made any payments since he was

5

terminated from employment with the company in June 2022. The executed Rule to Show Cause setting the date for hearing on August 5, 2024, was served upon Darryl by the sheriff's deputy but not sent via email to Hill.

The directions for service ordered the sheriff to deliver everything, including the executed order fixing the rule to show cause, to Darryl at his home. A sheriff's return states it was delivered to Darryl on June 27, 2024. The attorney did not receive the notice setting the hearing date.

On July 30, 2024, Hill emailed RLIC's attorney an untimely opposition to the motion for partial summary judgment, but it did not contain any supporting documentation authorized under La. C.C.P. art. 966. On August 2, 2024, Hill sent an email to Marie Madison, the trial court's assistant, and with a copy to RLIC, stating, "I notice this case is on docket for Mon 8/5.-I was never served and do not waive service. I submitted memo expecting hearing 8/15."[4]

On August 5, 2024, the hearing took place with only RLIC's attorney present. The trial court revealed that it had received a communication from Hill that she had not been served with notice of the date of the hearing. RLIC's attorney objected to ex parte communication but also stated that RLIC's reply memorandum and objection were based upon the failure to timely file Darryl's opposition and that without a timely and properly filed brief, no argument would be allowed in response to the motion for summary judgment. He noted that there had been no formal opposition to hearing being held or to the motion for partial summary judgment.

---

[4] Hill's memorandum in opposition to the motion for partial summary judgment does not appear in the record as filed and there was no objection in the record to the hearing taking place or indicating that she had not received service other than the email above. Thus, there was no opposition to RLIC's motion for partial summary judgment.

While addressing service of notice, the attorney introduced his email to Hill sending the pleadings and exhibits and the certificate of service and the sheriff's return of service to Darryl Miller. He argued that service on the litigant is sufficient and is "always good." Darryl was personally served by citation and Hill was served by certificate of service by email.

The trial court found that Darryl had been properly served per La. C.C.P. arts. 966(C)(1)(b) and 1314 and that no objection or opposition to summary judgment had been legally raised. Therefore, the trial court ruled in RLIC's favor granting its partial summary judgment declaring dissolution and awarding possession of the property to it. Darryl was cast with costs related to the partial summary judgment. The judgment was signed on August 21, 2024.

Darryl appealed this partial summary judgment awarding dissolution and possession of the property; however, the trial court had not certified the judgment as a partial final judgment, and this court recognized that absent a certification of the judgment as a final judgment under La. C.C.P. art. 1915(B)(1), the matter would be converted to a writ application for supervisory review. The matter was subsequently certified by the trial court, and it is now ripe for review as a partial final summary judgment.

## DISCUSSION

Darryl argues that the trial court erred in granting a summary judgment on dissolution and possession of the property in August 2024 without addressing the ambiguities and defects in the lease and the mortgage in the May 2024 partial summary judgment. He argues that a declaration of the rights and status of the parties requires interpretation of the contracts they executed and that the trial court erred when it failed to address the

7

ambiguity between them. He also argued that the trial court used summary judgment proceedings, found only that he had failed to make payments on the house and granted judgment in RLIC's favor.

Darryl contends the lease had already expired when the suit was brought and that the same parties executed a mortgage and promissory note, which he claims was an attempt to transfer title to him. He argues RLIC's proper remedy was to seek foreclosure; but, instead, it sought to revive the lease to evict him from the house for nonpayment of rent. Darryl contends either the lease is expired or there was a defective attempted sale, and promissory notes cannot be enforced against a defective contract of sale. He argues that these raise genuine issues of material fact which make summary judgment inappropriate. He further argues that the Dead Man's Statute, which disallows parol evidence in certain cases when one of the parties to a contract is deceased, is applicable to this case and that Cleo cannot give evidence regarding the intent of the parties to the mortgage and promissory note.

RLIC argues that Darryl has already been found to be in default on his obligations to it and that he declined to seek review of that ruling. It contends that although Darryl filed the notice of appeal related to the judgment dated August 8, 2024, he now seeks review of the judgment rendered in May 2024 regarding his default on the payment for his possession of the house under the various contracts he signed. It asserts that the judgment concerning default is final because appeal delays lapsed before it filed the second motion for partial summary judgment regarding dissolution of the contracts and possession. For that reason, it claims the only issue pertinent to this appeal is the judgment rendered in August 2024,

8

pointing out that Darryl did not appear at the hearing and declined to oppose the second motion for partial summary judgment. Because of these factors, it asserts the trial court correctly ruled that the property should be returned to it.

This case presents a procedural problem that has not yet been addressed by this court. The May 2024 partial summary judgment addresses only the issue of default and was not appealed. Therefore, it remains a partial summary judgment that is considered an interlocutory judgment which may be revised at any time prior to rendition of the judgment adjudicating all the claims, rights and liabilities of all the parties. La. C.C.P. art 1915(B)(2).[5]

The second partial summary judgment is that of August 2024, which was certified as a partial final judgment and is one from which an immediate appeal may be taken under La. C.C.P. art. 1915(B)(1).

---

[5] As of August 1, 2025, La. C.C.P. art 1915 has been amended and states in pertinent part as follows:

> B. If an appeal is taken from any judgment rendered in accordance with Paragraph A this Article, the trial court shall retain jurisdiction to adjudicate the remaining issues in the case.
> C. Except as otherwise provided by law, when a court grants a judgment or summary judgment, or sustains an exception in part, as to one or more but fewer than all of the claims, demands, issues, or theories by or against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, that judgment is an interlocutory judgment.

Comment (a) to the 2025 amendment states:

> These amendments largely restore the Article to its pre-1997 form. The revisions remove from Paragraph B of this Article the authority of the trial court to designate a judgment as final and appealable after an express determination that there is no just reason for delay. As a result, Paragraph A of this Article now provides a list of judgments from which an appeal may be taken. This change seeks to remove uncertainty as to whether an appeal or a supervisory writ should be taken from a judgment that does not grant the successful party or parties all of the relief prayed for or may not adjudicate all of the issues in the case.

Comment (b) to the 2025 amendment states, in part:

> Paragraph B of this Article retains much of the language of former Paragraph C. The language of Paragraph C of this Article is new and provides for interlocutory judgments that are not appealable. *See* Article 2083(C).

When an unrestricted appeal is taken from a final judgment determinative of the merits, an appellant is generally entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. *Stevens v. St. Tammany Par. Gov't*, 16-0534 (La. App. 1 Cir. 1/18/17), 212 So. 3d 568. In the case of an appeal from a partial final judgment or partial summary judgment designated as final under La. C.C.P. art. 1915(B), an appellant may also appeal an interlocutory judgment involving the same or related issues. *Id.* In *Stevens*, the court found that because the trial court's interlocutory ruling on the issue of protective order was incorporated and interrelated with the trial court's contempt judgment, it was appropriate to consider the merits of the petitioners' second assignment of error.

In order to assist the appellate court in its review of designated final judgments, the trial court should give explicit reasons, either oral or written, for its determination that there is no just reason for delay. *R.J. Messinger, Inc. v. Rosenblum*, 04-1664 (La. 3/2/05), 894 So. 2d 1113. For purposes of judicial efficiency and economy, the proper standard of review for an order designating a judgment as final for appeal purposes when accompanied by explicit reasons is whether the trial court abused its discretion. *Id.* If no reasons are given but some justification is apparent from the record, the appellate court should make a de novo determination of whether the certification was proper. *Id.*

Based on the foregoing jurisprudence, this court will conduct a de novo review of both partial summary judgments because the first is an interlocutory judgment which may be reviewed now that the second has been properly certified for appeal. Without the first one finding Darryl in

default, the second would not have been rendered. Even though there is still an outstanding issue, i.e., if, and how much, Darryl owes RLIC, he is still subject to losing possession of the home now.

La. C.C.P. art. 966(D)(1) states that the burden of proof on summary judgment rests with the mover. If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but, rather, to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action or defense. *Id*. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id*.

We review the grant of a motion for summary judgment de novo. *Todd v. Angel*, 48,687 (La. App. 2 Cir. 1/15/14), 132 So. 3d 453, *writ denied*, 14-0613 (La. 5/16/14), 139 So. 3d 1027. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success or determines the outcome of the legal dispute. *Id*. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id*. *Gauthier v. Foster Homes, LLC*, 53,143 (La. App. 2 Cir. 11/20/19), 284 So. 3d 1206.

We have conducted a de novo review of this record of the first partial summary judgment rendered in May 2024 and find that the trial court did not err in rendering judgment in RLIC's favor. Although we cannot ascertain the true intent of the parties to the promissory note and collateral mortgage,

11

there is no act translative of title to Darryl, and RLIC remains the legal owner of the home. RLIC presented evidence that Darryl was occupying the subject property under a lease and that he had not been making payments under either the lease or on the promissory note/mortgage. Further, after the signing of the promissory note and collateral mortgage, LERAP paid rent on Darryl's behalf to RLIC. Although Darryl denied having applied for these funds, RLIC also denies having made the application and asserts that only people renting could apply for these emergency funds. RLIC proved all elements of its claim, and Darryl was unable to provide factual support in opposition or to prove the existence of a material issue of fact that would preclude this judgment. For these reasons, this assignment of error is without merit.

Because of the foregoing decision, the assignment of error related to application of the Dead Man's Statute is pretermitted. Parol evidence is not necessary to explain the validity or purpose of the promissory note and collateral mortgage once the determination was made that, for whatever reason, Darryl was occupying the home without making payments for years.

The partial summary judgment granted in August 2024 found that RLIC was entitled to dissolution of the contracts between it and Darryl and that the home should be returned to it as the owner. Darryl has raised an issue in regard to this partial summary judgment and argues that because service of notice of the date of the hearing was deficient, he was denied the right to oppose the motion at the hearing on August 5, 2024; and, in fact, his attorney did not file any timely opposition and did not appear to argue in opposition to the motion.

12

Notice to Darryl by the Ouachita Parish Sheriff's Office was properly served per La. C.C.P. arts. 966(C)(1)(b) and 1314, and no objection or opposition to summary judgment had been legally raised. La. C.C.P. art. 966(C)(1)(b) provides that notice of the hearing date shall be served on all parties in accordance with Article 1313(C) or 1314 not less than thirty days prior to the hearing. La. C.C.P. art. 1314(A)(1) provides that a pleading which is required to be served shall be served by the sheriff by service on the adverse party in any manner permitted under La. C.C.P. articles 1231 through 1266. La. C.C.P. art. 1231 provides that service of citation or other process may be either personal or domiciliary and La. C.C.P. art. 1232 provides that personal service is made when a proper officer tenders the citation or other process to the person to be served. For the foregoing reasons, we agree that service was proper, and this assignment of error is without merit.

We have conducted a de novo review of the record regarding the partial summary judgment ordering dissolution and awarding possession of the property to RLIC. RLIC's motion was filed along with supporting documentation of its entitlement to the return of its property including all of the documents previously filed indicating it is the present owner of the subject property by virtue of the sale to it in 2013. The lease contains clauses giving RLIC the right to enforce the terms in any mode provided by law if any default occurs. It also contains a clause that RLIC has the right to immediately declare the agreement terminated if the tenant fails to pay the rent on time, and the tenant "shall immediately vacate the Property."

There was no opposition to RLIC's motion. It proved all the elements necessary through documentation showing that it is the owner of the

13

property, that Darryl did not make payments for many years and that he was legally found in default of the agreement. For these reasons, the trial court's judgment granting partial summary judgment dissolving the agreement between them and restoring the property to RLIC was proper and is affirmed. For the foregoing reasons, this assignment of error is without merit.

## CONCLUSION

For the above reasons, the judgments of the trial court granting the motions for partial summary judgment in favor of Reliance Life Insurance Company, Inc., finding Defendant Darryl Miller in default on payments for occupancy of the home and declaring that the property should be returned to its owner, are affirmed. Costs of this appeal are assessed to Darryl Miller.

**AFFIRMED.**